IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE REESE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 24-cv-01428-SMY |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| and ZORIAN TRUSEWYCH, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the motion for summary judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Wexford Health Sources, Inc. ("Wexford") and Zorian Trusewych (Doc. 35). Plaintiff Terrance Reese opposes the motion (Doc. 46). For the following reasons, the motion is **GRANTED** in part and **DENIED** in part.[1]

## BACKGROUND

Plaintiff, by counsel, filed this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights during his incarceration at Centralia Correctional Center and Western Illinois Correctional Center, of the Illinois Department of Corrections ("IDOC") (Doc. 6).[2] Plaintiff alleges that on or about June 4, 2022, he seriously injured his left index finger at Centralia (Doc. 6, pp. 3-4). He was taken to an outside hospital where his dislocated finger was put back into place, x-rayed, and splinted. The treating doctor recommended Plaintiff see an orthopedic specialist in a week, but this was not done. After Plaintiff filed a grievance, he was

---

[1] Given the undisputed material facts, the Court concludes that it is not necessary to hold a hearing on the exhaustion issues raised in Defendants' motion.

[2] The Individual in Custody Search on the IDOC's website shows that Plaintiff (IDOC #S09037) is currently in prison at Graham Correctional Center. https://idoc.illinois.gov/offender/inmatesearch.html (last visited Sept. 11, 2025).

1

taken on August 8, 2022 to Mt. Vernon Orthopedic, where he learned the muscle and tissue had healed incorrectly and he would need surgery (Doc. 6, p. 4).

In October 2022, Centralia medical staff gave Plaintiff Tylenol and noted joint enlargement, pain, stiffness, and limited range of movement. His Patient Progress Note states "MD Referral" but Plaintiff was not sent to a specialist while at Centralia.

Plaintiff was transferred to Western Illinois Correctional Center on November 4, 2022 (Doc. 6, p. 5; Doc. 46-1, p. 18). On November 29, 2022, medical staff at Western noted that his left index finger was painful and misaligned. On approximately January 20, 2023, an LPN noted Plaintiff needed follow-up with a surgeon. A January 27, 2023 referral/report signed by Defendant Dr. Trusewych notes that Plaintiff was unable to flex his finger (Doc. 6, p. 5; Doc. 46-1, p. 14). Plaintiff was approved to visit a hand surgeon on that date. A note dated February 28, 2023 states a specialty referral was needed for surgery.

On approximately March 7, 2023, Plaintiff was sent for orthopedic consultation with an outside specialist, who told him there was a chip fracture that healed incorrectly and surgery was required. Plaintiff was still in pain as of the date this case was filed.

Count 1 of Plaintiff's Complaint asserts an Eighth Amendment deliberate indifference claim against Defendant Dr. Trusewych and unnamed Wexford medical employees[3] for delaying necessary outside specialist referrals and surgery for his serious finger injury (Doc. 6, pp. 1-7). Count 2 asserts a claim against Defendant Wexford based on its policies, practices, and procedures which allegedly resulted in deliberate indifference to Plaintiff's serious injury and need for appropriate medical care (Doc. 6, pp. 7-9). *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).

---

[3] The Unknown Medical Defendants were dismissed from the action without prejudice on October 1, 2024 (Doc. 29).

**Relevant Grievances** The parties identify three grievances filed by Plaintiff that may be relevant to his claims:

### *Grievance No. E-22-7-203, dated July 28, 2022 – Centralia*

Plaintiff marked this grievance as an emergency, and it was expedited as such on August 1, 2022. (Doc. 36-1, pp. 32-33). Plaintiff complains that after suffering the injury on June 4, 2022, he was taken to St. Mary's Hospital where a doctor reset and splinted the finger and ordered an orthopedic specialist visit within a week. Plaintiff saw prison medical staff (not a doctor) on June 15, 2022, who told him he still had to be approved for an outside medical visit. On July 6, 2022, Plaintiff again saw prison medical staff during sick call, who noted he had pain, swelling, and numbness. His outside appointment still had not been scheduled. Plaintiff next saw a prison medical provider on July 20, 2022. He was told he would be submitted to see a prison doctor for his pain and symptoms.

As of the date of Plaintiff's grievance, he had not seen a doctor nor been scheduled for a specialist visit. He was still experiencing significant pain, and his finger had become discolored and lost all feeling. Plaintiff sought immediate medical care for his dislocated and fractured left index finger – specifically, immediate scheduling to see an orthopedic specialist, and to receive the specialist's recommended treatment.[4]

### *Grievance No. 22-9-61, dated Sept. 8, 2022 – Centralia*

Plaintiff asserts that "medical staff at Centralia" were deliberately indifferent to his June 4, 2022 finger fracture. (Doc. 36-1, pp. 34-35). Plaintiff again noted treatment by the doctor at St. Mary's Hospital and his recommendation for an orthopedic specialist visit within a week. Plaintiff

---

[4] Before receiving a response to Grievance No. E-22-7-203, Plaintiff filed a second grievance (No. 22-9-61). He received a combined response to both, dated November 2, 2022 (Doc. 36-1, pp. 30-31).

additionally asserts that the outside doctor told him there was a chip in the bone of his finger and instructed the splint should be removed within a week. Plaintiff sent written requests to Centralia's Health Care Unit staff asking for the specialist follow up.  Nursing staff told Plaintiff to keep the splint on for six to eight weeks.

Plaintiff had been sent to a specialist at Mt. Vernon Gateway Orthopedic Office on August 8, 2022, who said nothing could be done to repair damage to Plaintiff's finger that resulted from the splint being left on too long.  The Centralia medical staff's delay in providing the specialist-recommended medical care caused Plaintiff's finger to be numb, painful, swollen, and incapable of bending or closing.

As of September 8, 2022, Plaintiff had not been seen by a doctor in the Centralia Health Care Unit.  All treatment decisions were made by nursing staff.  Plaintiff's injuries were the direct result of Centralia and IDOC not enforcing the contract with Wexford to provide adequate medical staffing and care.  As relief, Plaintiff requested monetary compensation and a single occupancy cell.

On November 2, 2022, the Centralia grievance officer issued a single response to Grievance No. E-22-7-203 and Grievance No. 22-9-61 (Doc. 36-1, pp. 30-31).  The grievances were "partially upheld." (Doc. 36-1, p. 30).  The recommendation noted that Plaintiff had been seen and evaluated for the finger injury.  He was sent out and "the dislocation was reset.  Imaging revealed good alignment with no acute fracture." (*Id.* at p. 31).  Pain medication and range of motion exercises were prescribed. Plaintiff had been "referred to see the M.D. as of 10-6-22 & 10-31-22 and is still waiting to be seen." (*Id.* at pp. 30-31).

Plaintiff appealed to the Administrative Review Board ("ARB").  Addressing both

grievances together,[5] the ARB denied the appeal on Dec. 21, 2022, stating "The actual treatment ordered is not within the jurisdiction of this office and must be ordered by the attending physician." (Doc. 36-1, p. 29).

### *Grievance No. 22-5303E, dated December 5, 2022 – Western*

Plaintiff filed this emergency grievance "to insist upon the necessary medical treatment that was scheduled prior to my transfer." (Doc. 36-2, p. 25). He stated he was seen by the doctor at Centralia on approximately September 17, 2022 for the injury to his finger. He was then "recommended, approved, and scheduled to see a hand surgeon for possible surgery to repair damage." *Id*. However, he was "wrongly transferred" to Western on November 7, 2022 even though his consultation was approved by the doctor. Plaintiff requested to be seen by a "proper hand specialist to verify if I need surgery to repair [the] damage to [his] hand." *Id*.

The warden approved the grievance to be expedited as an emergency on December 7, 2022. *Id*. On April 4, 2023, the grievance officer responded, noting Plaintiff had been sent out for a consult with an orthopedic surgeon on March 7, 2023, who recommended ice and elevation as needed, Ibuprofen every six hours as needed, "and to keep current range of motion." (Doc. 36-2, p. 24).[6] The grievance officer recommended the grievance be deemed moot, and the warden concurred. *Id*. Plaintiff did not appeal this grievance to the ARB. (Doc. 46, p. 4).

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of

---

[5] The ARB decision is labeled with Grievance No. E-22-7-203, but references grievances dated 7/28/22 and 9/8/22 (Doc. 36-1, p. 29).
[6] Plaintiff notes that the March 7, 2023 visit was not to an orthopedic surgeon, but was in fact to a nurse practitioner (Doc. 46, pp. 8, 12; Doc. 46-1, p. 14). He adds that he continued to have pain and reduced range of motion and flexion as of January 11, 2024, and still had not seen an orthopedic surgeon as of the date he filed the Complaint (Doc. 46, p. 8; Doc. 46-1, p. 13).

material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *see also Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022).

For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *See* also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 Ill. Admin. Code § 504.800, *et seq*. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who

6

is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the Administrative Review Board ("ARB") within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures further allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

An inmate is required to exhaust only those administrative remedies that are available to him. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting his administrative remedies. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809. Additionally, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Ross*, 578 U.S. at 643. *See also Booth v. Churner*, 532 U.S. 731, 736, 738 (2001) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

### Claim against Dr. Trusewych (Count 1)

Defendants argue Grievance Nos. E-22-7-203 and 22-9-61, filed at Centralia, failed to

exhaust Plaintiff's claims against Dr. Trusewych because Dr. Trusewych was not among the medical staff employed at Centralia and did not encounter Plaintiff at that facility. Plaintiff did not come under Dr. Trusewych's care until after Plaintiff was transferred to Western Illinois Correctional Center. The Court agrees.

Plaintiff's medical records show that he was first seen by Dr. Trusewych on January 27, 2023, at Western for follow up on his left index finger condition (Doc. 36, p. 9; Doc. 47, p. 6). Plaintiff's only grievance filed at Western, No. 22-5303E, was dated December 5, 2022 – also before he saw Dr. Trusewych. Therefore, it could not have exhausted his claims against Dr. Trusewych.

Defendants' motion will be granted as to Dr. Trusewych; he will be dismissed from the action without prejudice.

### *Monell* Claim against Wexford (Count 2)

Defendants admit that Plaintiff properly exhausted his claim against Wexford regarding their policies and practices that caused deficiencies in his medical treatment at Centralia, by filing and fully appealing Grievance Nos. E-22-7-203 and 22-9-61 (filed at Centralia). Thus, Wexford is not entitled to dismissal of Plaintiff's claim as it relates to his need for medical treatment at Centralia.

With respect to Plaintiff's claim against Wexford arising from events at Western Illinois Correctional Center, Defendants argue the Centralia grievances (Nos. E-22-7-203 and 22-9-61) did not exhaust those claims and the Western Grievance No. 22-5303E did not exhaust Plaintiff's claims related to that prison because Plaintiff did not appeal that grievance to the ARB.

Plaintiff's claim in Count 2 focuses on Wexford's policies and practices that allegedly resulted in delays and failure to properly treat his finger injury at both Centralia and Western.

First, Defendants rely on cases holding that where a prisoner was transferred to a different prison and sought treatment for an ongoing medical condition, a grievance over denial of medical care filed at his original/first institution did not exhaust the prisoner's claims against the new individual medical provider(s) at the new institution. *See Bilik v. Hardy*, No. 12-CV-04532, 2023 WL 3864588, at *4-5, 2023 U.S. Dist. LEXIS 99079 at *11 (N.D. Ill. June 7, 2023); *Burt v. Berner*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *4, 015 U.S. Dist. LEXIS 216625 at *14 (S.D. Ill. Apr. 14, 2015); *Barrow v. Wexford Health Sources, Inc.*, No. 13-CV-794-NJR-DGW, 2015 WL 1740044, at *4, 2015 U.S. Dist. LEXIS 130166 at *5 (S.D. Ill. Apr. 14, 2015). However, in each of these cases, the plaintiff raised claims against *individuals* responsible for his care at a different prison from where the plaintiff filed and exhausted his original grievance. The courts found that the transfer to a new prison, which placed the plaintiff under the care of a new doctor, sufficiently changed the facts relating to his ongoing condition that a new grievance was required to exhaust claims that arose in the new prison against the new individual provider.

Plaintiff's claim against Wexford is distinguishable. Unlike the claims against individual medical providers, Plaintiff's claims in Count 2 stem from Wexford's policies, practices, and procedures that were in place at both Centralia and Western. Thus, under the continuing violation rationale in *Turley*, Plaintiff did not need to file a new grievance regarding Wexford's policies/practices, which continued to govern his efforts to obtain medical treatment after his transfer to Western.[7] *See Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001) (a continuing violation runs for as long as the defendant has "the power to do something about [the inmate's] condition"). Notably, Plaintiff was transferred to Western when he had already been approved and scheduled for a specialist consultation by Wexford's medical providers at Centralia. Wexford

---

[7] Plaintiff did, of course, file a new grievance at Western, No. 22-5303E which arguably served its purpose of alerting officials at Western to Plaintiff's complaint over his medical care.

9

continued to have the power to address Plaintiff's medical condition after his transfer. Plaintiff alleges he was required to start the process of seeking treatment over again at Western, by going through Wexford's providers at that prison to get the consultation that he needed for his hand injury. That process further delayed Plaintiff's specialist appointment.

Moreover, Plaintiff contends the ARB's combined response to his Centralia grievances, stating the medical treatment he sought was "not within the jurisdiction of this office" (Doc. 36-1, p. 29), rendered the administrative remedy process unavailable as to his subsequent grievance filed at Western. Specifically, Plaintiff received the ARB decision after his transfer to Western, and after he filed Grievance No. 22-5303E. He reasons that because the ARB informed him that it lacked jurisdiction over his medical care, the grievance process was rendered "opaque and of no use," offering him no chance to obtain relief (Doc. 46, p. 12). Thus, he argues officials thwarted his attempt to use the grievance process by misrepresenting that the process could provide some remedy, while the ARB told him it had no jurisdiction over his medical care. As a result, an appeal to the ARB would have been useless after the grievance officer deemed the Western Grievance No. 22-5303E moot.

The ARB's statement that the medical treatment ordered "is not within the jurisdiction of this office and must be ordered by the attending physician" informed Plaintiff that the prison's administrative grievance procedure lacked authority to provide him with relief. *See Booth*, 532 U.S. at 736, 738. This response to the Centralia grievances rendered the appeal process unavailable to Plaintiff as to Western Grievance No. 22-5303E, which addressed the same ongoing lack of medical care that he experienced at Centralia. The ARB made it clear that further appeal to that body would be a dead end. Accordingly, Plaintiff had nothing more to exhaust relative to this grievance.

Wexford has not met its burden to demonstrate that Plaintiff failed to exhaust his administrative remedies on the *Monell* claim in Count 2.

## DISPOSITION

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Trusewych and Wexford Health Sources, Inc. (Doc. 35) is **GRANTED** in part as to the claim in Count 1 against Dr. Zorian Trusewych. Defendant Trusewych is **DISMISSED** from the action without prejudice for failure to exhaust administrative remedies.

The Motion is **DENIED** in part as to the claim in Count 2 against Wexford Health Sources, Inc. This case will proceed on the *Monell* claim in Count 2 as set forth in the Complaint (Doc. 6).

The matter of exhaustion of administrative remedies now being resolved, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order setting discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

**DATED:  September 18, 2025**

>                           *s/ Staci M. Yandle*
>                           **STACI M. YANDLE**
>                           **United States District Judge**